Argued and submitted April 3, 1995, affirmed on appeal; reversed and remanded on cross-appeal January 3, petition for review denied May 28, 1996 (323 Or 265)

Harold L. TORBECK,
*Appellant - Cross-Respondent,*

*v.*

Steve CHAMBERLAIN,
Merle Moody and Marc Sanchez,
*Respondents - Cross-Appellants,*

*and*

Toni WETZEL,
*Defendant.*

(92CV-0675; CA A80538)

910 P2d 389

Ridgway K. Foley, Jr., argued the cause for appellant - cross-respondent. With him on the briefs was Foley & Duncan, P.C.

David S. Tilton argued the cause for respondents - cross-appellants. With him on the briefs was Oregon Legal Services Corporation.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

**LANDAU, J.**

Plaintiff appeals a judgment for defendants in this case involving nearly two dozen claims and counterclaims arising out of a "house sharing" arrangement with defendants. Defendants cross-appeal. We affirm on the appeal and reverse and remand on the cross-appeal.

Plaintiff owned a six-bedroom house in Coos County, where he lived for seven years. He is in the merchant marine and is at sea for long periods of time. In 1992, plaintiff rented his house to defendants on a "house sharing" basis, which according to plaintiff permitted defendants to "have the run of the place," except for plaintiff's bedroom and perhaps the bedroom of his son. Defendants signed a standard residential tenancy agreement form which did not mention the shared living arrangement. Plaintiff kept the telephone and electric utility accounts in his name, and defendants agreed to pay their portion of the expenses.

During March of 1992, plaintiff lived in the house intermittently, coming and going freely without interference from defendants. On March 23, 1992, plaintiff sold his house to his mother, who, in turn, granted plaintiff a power of attorney to act on her behalf. At that time, plaintiff was involved in divorce proceedings, and, while staying at his house, he exhibited what defendants regarded as bizarre behavior. At the same time, plaintiff concluded that he and defendants were not compatible. Friction resulted.

On April 4, 1992, a disagreement ensued over one of defendants' rent payments. Defendants had, in fact, paid the full amount of their rent, but plaintiff demanded additional money to cover damage to a cassette tape recorder that he thought one of defendants had broken. Plaintiff threatened to physically throw defendants and their possessions out the door. Defendants called 9-1-1 and requested police assistance. While everyone waited for the police, plaintiff drafted an eviction notice.

When a police officer arrived at the house, defendants requested that plaintiff be removed from the house. The officer reviewed the rental agreement and, seeing no mention of any shared living arrangement with plaintiff, ordered plaintiff off the premises. Plaintiff returned to the

house later that day to deliver a more formal notice of eviction. Still later, in the evening, plaintiff again returned to the house to deliver another eviction notice. None of the defendants were home, although the daughter of one of defendants was there, hosting a slumber party. Plaintiff banged on the door and demanded entry, but the children's chaperone refused. The children called 9-1-1. Plaintiff eventually left, after cutting the telephone lines to the house. A police officer investigated, located plaintiff at his mother's house and arrested him for criminal mischief and criminal trespass.

After spending two days in jail, plaintiff was released and the charges against him were dismissed. He called the electric utility and had service to the house terminated, without notice to defendants, and had the sheriff deliver another eviction notice to defendants.

Plaintiff then initiated this action, asserting claims for breach of contract, ejectment, "initiation of false police report," false arrest, defamation, negligence and conversion. Defendants responded with thirteen counterclaims, including three predicated on violations of the Residential Landlord and Tenant Act (RLTA): retaliation, harassing demand for entry and wilful diminution of utility services.

At trial, plaintiff withdrew his claims for false arrest, defamation and negligence. At the close of plaintiff's case, defendants moved for a directed verdict against the claim for "initiation of false police report," arguing that no such claim exists under Oregon law. The trial court granted the motion. At the close of defendants' case, plaintiff moved for a directed verdict against the three RLTA counterclaims, arguing that defendants were not "tenants" entitled to the protection of the RLTA. The trial court denied that motion.

The case was sent to the jury with a 29-question verdict form jointly prepared and submitted by the parties. The jury returned a unanimous verdict, completing the special verdict form as requested. The jury found that plaintiff and defendants had entered into an agreement providing for "house sharing" and that defendants had breached that agreement by having the police officer remove plaintiff from the house on April 4, 1992. The jury also found that plaintiff

had unlawfully retaliated by evicting defendants from the premises, and that plaintiff had unreasonably harassed defendants and interrupted their utility service. Accordingly, the jury awarded plaintiff damages on his claims for breach of contract and ejectment, and it awarded defendants damages on their three counterclaims under the RLTA. The result was a net award in favor of defendants for $511.77.

Upon receipt of the verdict, the trial court asked whether either party objected to the verdict, and both parties replied that they had no objections. Plaintiff then moved for judgment notwithstanding the verdict, arguing that the jury's findings that plaintiff had violated the RLTA were inconsistent with the finding that he was entitled to occupy the premises and, therefore, should be ignored. The trial court denied the motion.

Defendants then moved for an award of attorney fees under ORS 90.255, which provides that such fees may be awarded to "the prevailing party" in an action arising under the RLTA. The trial court denied the motion and awarded neither party fees.

■ On appeal, plaintiff first assigns error to the trial court's order granting defendants' motion for a directed verdict on the claim for "initiation of [a] false police report." Plaintiff acknowledges that under Oregon law there currently exists no such claim. Nevertheless, he argues that such a claim should exist. Suffice it to say that we are unpersuaded by plaintiff's arguments that existing statutory and common law remedies are insufficient. We decline plaintiff's invitation to recognize his proposed new tort claim.

■■ Plaintiff argues that, in the alternative, we should construe his claim as one for a statutory tort, arising out of ORS 162.375, which provides, in part:

"(1) A person commits the crime of initiating a false report if the person knowingly initiates a false alarm or report which is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property."

Without explanation, but with citation to *Bellikka v. Green,* 306 Or 630, 636, 762 P2d 997 (1988), plaintiff argues that he is entitled to civil damages for violation of the criminal

statute. Defendants argue that a claim for damages for violation of a statute will lie only if it is demonstrated that the legislature intended such a remedy, and, they contend, there is no evidence that the legislature intended that with respect to ORS 162.375. We agree with defendants.

In *Bellikka*, the Supreme Court held that the violation of a statute may give rise to a claim for damages only

> "if the plaintiff can show that the damages suffered came about as a result of the violation of a statute which the legislature passed intending to give recourse to a group of plaintiffs, which includes the plaintiffs then seeking redress under the terms of the statute."

*Bellikka*, 306 Or at 636. Plaintiff has offered no evidence that the legislature intended to give civil recourse to anyone for violation of ORS 162.375, much less to a group of individuals that includes plaintiff. He simply asserts that the legislature "likely * * * had in mind the effect of false reports upon individual members of the public who might be harmed" as a result. The language of the statute evinces no such purpose. If anything, it focuses on impeding the activities of government agencies "that deal[] with emergencies involving danger to life or property." We conclude that plaintiff has failed to satisfy the requirements of *Bellikka* for establishing that the legislature intended to create a civil remedy for the violation of a criminal statute.

■        Plaintiff alternatively argues that, if nothing else, his claim should be construed as one for malicious prosecution. Defendants assert that that argument was not raised below and may not be considered for the first time on appeal. We agree.

■        Plaintiff also assigns error to the denial of his motions for a directed verdict on defendants' three counterclaims asserted under the RLTA. According to plaintiff, the RLTA affords protection only to a "tenant," who is statutorily defined as

> "a person, including a roomer, entitled under a rental agreement to occupy a dwelling unit to the exclusion of others[.]"

ORS 90.100(16) (1993). Because the jury found that plaintiff had a right to occupy the house along with defendants, he argues, defendants did not have a right to occupy the house

"to the exclusion of others." Therefore, he concludes, they were not "tenants" within the meaning of the RLTA and were not entitled to prevail on their RLTA counterclaims. Defendants argue that plaintiff's assignment is based on a misconception of the statutory definition of "tenant." They argue that "to the exclusion of others" only refers to a tenant's rights in relation to *the public*, not in relation to other tenants. We agree with defendants.

■ Whether defendants were "tenants" within the meaning of the RLTA presents a question of statutory construction, which is governed by the intentions of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We attempt to ascertain the intentions of the legislature first by examining the text of the statute in its context. If the legislature's intentions are manifest from that examination, we inquire no further. *Id.*

In this case, it is evident from the language of the statute that plaintiff's proposed construction was not intended by the legislature. ORS 90.100(16) (1993) defines "tenant" to include a "roomer," which, in turn, is defined as a person occupying a portion of a dwelling unit and sharing other portions such as the bathroom and kitchen "in common" with other occupants in the structure. ORS 90.100(15) (1993). Under plaintiff's proposed construction, a "roomer" could not be a "tenant" within the meaning of ORS 90.100(16) (1993), because the roomer does not have exclusive possession of the premises. That makes no sense, however, because the term "tenant" is expressly defined to include persons who share portions of the dwelling in common.

The trial court did not err in denying plaintiff's motions for a directed verdict.

■ Plaintiff also assigns error to the denial of his motion for judgment notwithstanding the verdict. Plaintiff argues that the jury's findings that he unlawfully retaliated and unreasonably harassed defendants and terminated their utility services cannot be reconciled with its findings that plaintiff was entitled to occupy the house and that defendants breached their agreement to maintain a shared housing arrangement. Defendants argue that plaintiff waived any

objection to the jury's verdict by preparing and stipulating to the form of the verdict and by failing to object when the judge asked whether the verdict should be received.

■■    We agree with defendants. A plaintiff cannot challenge the inconsistency of a jury verdict without first objecting to that inconsistency before the jury is dismissed. In *Marquam Investment Corp. v. Myers*, 35 Or App 23, 27, 581 P2d 545, *rev den* 284 Or 341 (1978), we held that:

> "In cases where an aggrieved party is seeking a new trial on the ground that the verdict is internally inconsistent, the moving party must have made an objection at the time the verdict was returned."

Plaintiff acknowledges *Marquam* but suggests that the decision should be "revisited." We decline to do so. He argues that, in the alternative, we should address the matter as error apparent on the face of the record. ORAP 5.45(2). We decline to do that as well. Plaintiff's argument rests on a false premise, *viz*, that there is an inconsistency in the verdict that is obvious and not reasonably subject to dispute. It is reasonably arguable that the verdict is not inconsistent at all. It is arguable, for example, that the jury's verdict amounts to nothing more than findings that plaintiff was a landlord who rented his residence to roomers who shared occupancy of a portion of the house, that he unlawfully evicted the roomers, harassed them and terminated their utility services and that the roomers unlawfully had the landlord removed as well. The trial court did not err in denying plaintiff's motion for judgment notwithstanding the verdict.

■    On cross-appeal, defendants argue that the trial court erred in denying their motion for an award of attorney fees. They contend that, under *Executive Mgt. Corp. v. Juckett*, 274 Or 515, 519, 547 P2d 603 (1976), a party who prevails in an action under the RLTA is entitled to fees absent misconduct or "extraordinary circumstances." Plaintiff argues that, under *Marquam*, 35 Or App at 31, attorney fees in an RLTA action may also be denied when the outcome of the action is inconclusive, and this, he asserts, is such a case. We agree with defendants.

■    We review for an abuse of discretion. ORS 90.255; *Marquam*, 35 Or App at 31. In *Executive Mgt. Corp.*, however, the Supreme Court said that, under the RLTA,

"normally a 'prevailing party' would be entitled to recover attorney fees, barring unusual circumstances which might arise in any particular case."

274 Or at 519. Plaintiff identifies no "unusual circumstances" in this case that warrant denying attorney fees, and we are aware of none. Plaintiff's argument that the outcome of this case is simply too "inconclusive" to warrant an award of fees is not persuasive. Plaintiff was awarded damages on certain claims, and defendants were awarded damages on certain counterclaims. The result was a net award in favor of defendants in the precise amount of $511.77. There is nothing inconclusive about that result. *See Napolski v. Champney*, 295 Or 408, 420, 667 P2d 1013 (1983); *Whittle v. Marion County District Court*, 108 Or App 463, 466, 816 P2d 658 (1991). The trial court erred in failing to award defendants their reasonable attorney fees.

Affirmed on appeal; reversed and remanded on cross-appeal.