**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0025n.06
Filed: January 8, 2007

**06-3293**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JEFFREY A. GRUSENMEYER & )
 ASSOCIATES, INC., )
 )
 Plaintiff-Appellant, )
 )
v. ) ON APPEAL FROM THE UNITED
 ) STATES DISTRICT COURT FOR THE
DAVISON, SMITH & CERTO ) NORTHERN DISTRICT OF OHIO
ARCHITECTS, INC.; WILLIAM R. )
DAVISON; RANDALL S. SMITH; and )
JEFFREY M. CERTO, )
 )
 Defendants-Appellees. )

Before: DAUGHTREY and McKEAGUE, Circuit Judges, and REEVES,[*] District Judge.

PER CURIAM. In this action for copyright infringement, plaintiff Jeffrey A. Grusenmeyer & Associates, Inc. (Grusenmeyer), an architectural firm, appeals from the district court's grant of summary judgment to defendant Davis, Smith & Certo Architects, Inc., and to its principals, William R. Davison, Randall S. Smith, and Jeffrey M. Certo (collectively, DSC Architects). Grusenmeyer also challenges the district court's denial of its own motion for summary judgment, contending that although the architectural drawings

---

[*]The Hon. Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

at issue merely documented existing conditions, they were sufficiently original to merit copyright protection; that the defendants were not licensed to use these drawings; that the defendants' use of the drawings was not permitted by the fair use doctrine; and that the individual defendants are subject to vicarious liability for the infringement. The district court held that the drawings were not sufficiently original to be protected by copyright and that, in any event, the defendants were entitled to their use under the terms of the plaintiff's contract with a third party. Because we conclude that the district court correctly determined that the defendants' use was permitted by contract, we affirm the court's grant of summary judgment to the defendants.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The record indicates that this case arose from a "request for proposal" from Magnificat High School for the development of a master plan to expand the school. Several architectural firms responded to the request, and Grusenmeyer was selected for the project. The owner of the Grusenmeyer firm, Jeffrey Grusenmeyer, subsequently drafted a two-page letter agreement setting out the details of a "proposed master plan and facilities study." Sister Carolyn Marshall, the high school's president, signed the agreement for Magnificat.

The contract provided that Grusenmeyer would: (1) "[r]eview the existing facility's conditions" and make maintenance and improvement recommendations accordingly, (2) "[r]eview and develop a program for capital improvements," and (3) "[p]rovide a master plan

for the implementation of the capital improvements program, including plans, renderings, and perspectives suitable *for use in presentation and future reference during master plan implementation.*" (Emphasis added.) Magnificat agreed to provide Grusenmeyer with "[o]riginal drawings of the building and site" and to pay a fee based on hourly rates, "not [to] exceed $15,000, with the first $2,000 of architectural services provided on a donated basis."

In developing the master plan, Grusenmeyer prepared a new set of drawings of the existing conditions of the property using a computer program. The resulting computer files combined information taken from the existing drawings and blueprints that Magnificat had provided to Grusenmeyer and the firm's own field measurements. Grusenmeyer registered these renderings with the U.S. Copyright Office, both as an "architectural work" and as a "technical drawing."

Jeffrey Grusenmeyer testified that these drawings and files were created "[s]eparate and apart from the requirements of th[e] contract," with the hope that Grusenmeyer "would later be the successful bidder to design the performing arts center." Although Jeffrey Grusenmeyer insisted that the electronic drawings were made for personal use and not for Magnificat, he also conceded that Magnificat "paid for portions of the services [used] in . . . creating [them]" and acknowledged that he had later given a copy of the electronic files to Don Koma, Magnificat's facility director, purportedly for Koma's "personal use." Counsel for Grusenmeyer was asked at oral argument on appeal whether the electronic files in

question were attached to the master plan that was turned over to Magnificat. He indicated that he could not say with certainty one way or the other, but the district court explicitly found that it was "undisputed that Plaintiff provided Magnificat with existing conditions drawings."

After Grusenmeyer completed the master plan for the expansion project, Magnificat sent out another "request for proposal," this time for the development of the performing arts building anticipated, but not fleshed out, by the master plan. Grusenmeyer submitted a proposal for this project, but it was awarded to another bidder, defendant DSC Architects. Marshall then provided DSC Architects with existing drawings of the site in a variety of forms, just as she had Grusenmeyer. The electronic files with the disputed drawings were also among the materials supplied to DSC Architects, in response to its standard request for copies of existing documentation of "built conditions." According to Marshall, it was accepted protocol for the school to provide this background information about existing structures once a project had been awarded.

DSC Architects referred to these materials in developing its plans for the performing arts center and later acknowledged that the drawings it developed to show the location of its proposed construction contained content from the files created by Grusenmeyer, including portions of the electronic drawings at issue here, which were inserted into the defendants' own electronic drawings. DSC Architects also did its own field work to supplement these drawings, in some cases correcting inaccuracies on the electronic files,

and it referenced supplemental materials, including other extant drawings of existing conditions provided by the school.

According to the individual DSC architects, such reliance on drawings of existing conditions created by others is routine in the industry. For example, Certo, the firm's secretary, testified that although he knew that these files had been created by Grusenmeyer, he had no hesitation about using them because such use is "a common practice." He testified that "[f]iles are exchanged in the profession routinely when work is being added to a facility, revised in a facility, [or] renovated" and that it is accepted practice to do so without first seeking permission where the drawings utilized merely document existing conditions. Davison echoed this view, adding that he had often provided other architects with background drawings that he had created for use in their own projects. He also remarked that before computer files were used to create drawings, architects would simply trace existing drawings.

The district court granted summary judgment to the defendants and denied summary judgment to the plaintiff, finding that the drawings in question were not sufficiently unique to merit copyright protection and, alternatively, that their use was authorized under the contract between Grusenmeyer and Magnificat. Because the court found that the contract was unambiguous as a matter of law, it declined to take into consideration Jeffrey Grusenmeyer's testimony concerning his understanding of its terms. Grusenmeyer now appeals that determination.

## II. **DISCUSSION**

We review a district court's grant or denial of summary judgment *de novo*. *See Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2006). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists when, "view[ing] the factual evidence and draw[ing] all reasonable inferences in favor of" the nonmoving party, sufficient evidence exists for a trier of fact to find for that party. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004) (citation omitted). However, introducing a "mere scintilla of evidence is insufficient" to withstand summary judgment, *id.*, and "[t]he nonmoving party may not rest on his pleadings, but must come forward with evidence from which a rational trier of fact could find in his favor," *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Where a party has used copyrighted material with permission, a finding of infringement is precluded. *See Johnson v. Jones*, 149 F.3d 494, 500 (6th Cir. 1998). The defendants argued, and the district court agreed, that notwithstanding any otherwise valid copyright protection, the contract between Grusenmeyer and Magnificat permitted DSC Architects to use the drawings. More precisely, the defendants argued that Grusenmeyer's agreement to "[p]rovide a master plan for the implementation of the capital improvements

program, including plans, renderings, and perspectives suitable for use in presentation and future reference during master plan implementation" permitted the use of the drawings at issue here, insofar as the defendants undertook to implement the master plan.

Grusenmeyer argues on appeal that in adopting the defendants' theory of the contract's coverage, the district court overlooked the provision that Grusenmeyer's services would be rendered in accordance with American Institute of Architect's "Abbreviated Form of Agreement Between Owner and Architect." Although Jeffrey Grusenmeyer conceded that the form agreement was not appended to the actual contract or otherwise supplied to Magnificat, he relied on Section 6.1 of AIA's form agreement to establish his exclusive retention of rights in the disputed drawings. That section of the form agreement provides:

> The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project, and the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others . . . except by agreement in writing and with appropriate compensation to the Architect.

The district court rejected the plaintiff's interpretation of the provision. Looking to the final sentence, the court emphasized the fact that Section 6.1 permitted "others, such as Defendants, [to] use Plaintiff's work if agreed to in writing and accompanied by

appropriate compensation." Having found that the record established both a written agreement between Grusenmeyer and Magnificat and appropriate compensation running to the former from the latter, the district court held that the AIA provision buttressed the defendants' motion for summary judgment rather than the plaintiff's.

We agree with this interpretation and with the district court's substantive ruling on the effect of the explicit contractual provisions, the "plain language" of which the court said

> called for Plaintiff to prepare a master plan "for the implementation of the capital improvements program, including plans, renderings and perspectives suitable for use in the presentation and future reference during master plan implementation." As provided in the contract, the program for capital improvements included the building of a "Fine Arts/Band Practice/Auditorium type space[ ]." It is undisputed that Plaintiff provided Magnificat with existing conditions drawings, and that those drawings were used in connection with the development of the Performing Arts Center at Magnificat. As such, the existing conditions drawings fall within the scope of Plaintiff's responsibilities under the contract, for which Magnificat paid Plaintiff approximately $15,000.
>
> It is consistent with logic that drawings of existing conditions would be necessary for the implementation of the capital improvements program and would therefore be included within Plaintiff's responsibilities under the contract. Equally logical is the fact that such drawings may be used in the implementation, in return for the compensation that Magnificat paid to Plaintiff.

We agree with the district court's conclusion that, contrary to the plaintiff's assertions, the contract permits the use, as described, of the materials developed under it. Otherwise, the contract provision stating that Grusenmeyer would "[p]rovide . . . plans, renderings, and perspectives suitable for use and future reference during master plan implementation" would be meaningless.

We find Grusenmeyer's remaining arguments concerning the meaning and scope of its contract with Magnificat equally unavailing. The plaintiff argues, for example, that the individual defendants' use of the drawings is not permitted under the terms of the contract because they are not expressly named in the contract, an argument that borders on the absurd. If we were to accept this view, we would have to hold that while the contract would permit Magnificat itself to use the materials developed by Grusenmeyer in implementing the master plan, it would not allow any of the professionals that the school hired to do so. But, obviously, Magnificat never intended to complete the ultimate project contemplated in the contract – that is, to design and build a performing arts center – on its own and without the help of professionals. Indeed, Jeffrey Grusenmeyer recognized as much from the beginning, testifying that "the members of my firm created architectural drawings depicting building floor plans and site plans of the then existing Magnificat campus, hoping that we would later be the successful bidder to design the performing arts center."

We also reject the plaintiff's insistence that our opinion in *Johnson* mandates a reversal of the district court's order, because we conclude that the facts in that case are fundamentally distinct from those now before us. In *Johnson*, we were not called upon to interpret a written contract but to determine the intentions of an architect and his client who had never reduced their agreement to writing. *See id.* at 497-99. In the absence of an express agreement, the issue was whether the architect had granted an *implied* license to use his work, which required discerning his intent based on the totality of the circumstances. *Id.* at 500-02. Obviously, no such task presents itself in this case because

the agreement was not only in writing but was also, as the district court correctly found, unambiguous.

## III. __CONCLUSION__

Because we agree with the district court's determination that the contract between Grusenmeyer and its client, Magnificat High School, permitted the defendants to use the plaintiff's drawings for the very purposes to which those drawings were put, we find it unnecessary to address the other issues raised on appeal, including the suitability of the drawings for copyright protection and the applicability of the fair use doctrine. The order of the district court awarding summary judgment to the defendants is, therefore, AFFIRMED.