*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KALAMAZOO ACQUISITIONS, L.L.C.,

*Plaintiff-Appellee,*

*v.*

No. 03-2323

WESTFIELD INSURANCE CO., INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00564—Richard A. Enslen, District Judge.

Argued: October 27, 2004

Decided and Filed: January 19, 2005

Before: KEITH, CLAY, and BRIGHT, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Deborah A. Hebert, CARDELLI, HEBERT & LANFEAR, Royal Oak, Michigan, for Appellant. Floyd E. Gates, Jr., KREIS, ENDERLE, CALLANDER & HUDGINS, Battle Creek, Michigan, for Appellee. **ON BRIEF:** Deborah A. Hebert, CARDELLI, HEBERT & LANFEAR, Royal Oak, Michigan, for Appellant. Floyd E. Gates, Jr., Mark E. Kreter, KREIS, ENDERLE, CALLANDER & HUDGINS, Battle Creek, Michigan, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. In this action for breach of a contract for commercial property insurance, Defendant Westfield Insurance Co., Inc., ("Westfield") appeals the district court's grant of summary judgment in favor of Plaintiff Kalamazoo Acquisitions, L.L.C. ("Kalamazoo") and seeks entry of judgment in its favor. Westfield asserts that Kalamazoo is barred from bringing this action because it entered into a general release with the party who damaged the property insured by Westfield and hence impaired Westfield's right of subrogation, in breach of the parties' policy for property insurance. The district court held that Westfield waived this argument. Because Westfield did not waive this argument and because the argument disposes of the case, we REVERSE the

---

[*] The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

judgment of the district court and REMAND with instructions that the district court enter judgment in Westfield's favor.

# I. FACTS

Kalamazoo owns a commercial multi-tenant building in Kalamazoo, Michigan, which it began to renovate during late 2000. In order to accomplish the renovations, Kalamazoo hired Continental Construction ("Continental") to raise the ceiling of the building's top floor. To facilitate construction of a new roof, Continental drilled holes in the existing roof, situating a steel beam in each hole; ultimately, a total of 12 such beams would support the beginnings of the new roof.

Around February 25, 2001, the city suffered a heavy rainstorm, which caused water to enter the building by way of the space in between the beams and the edges of the holes in the existing roof. In an effort to divert the streaming water into the building's drainage system, Continental covered the holes with visqueen (a dense plastic material). The visqueen did not succeed in its mission and the interior of the top three floors of the building sustained serious water damage as a consequence. Kalamazoo alleges that the total cost of repairing the damage, or the replacement cost value ("RCV") of the loss, was $357,968.[1]

In the aftermath of the storm, Kalamazoo settled its claim against Continental for $208,188, which it claims was the actual cash value ("ACV") of the loss.[2] In exchange for this sum, Kalamazoo agreed to release Continental and its insurer, Amerisure, from any and all claims arising from the water damage. The date of the general release between Kalamazoo and Continental was September 6, 2001. Kalamazoo first notified Westfield of the release by letter dated November 1, 2001, in which letter Kalamazoo also made a claim for the $149,780 now in dispute. According to Kalamazoo, this amount represents the difference between the RCV and the ACV. On February 28, 2002, Westfield denied the claim on the grounds that Kalamazoo had breached express conditions in the parties' insurance policy (the "policy") by releasing Continental and Amerisure from further claims and thereby waiving Westfield's right of subrogation against Continental and Amerisure without its consent.[3] On June 7, 2002, Westfield made what it calls "a professional concession to the independent insurance agent handling [Kalamazoo's] business," Brief of Appellant at 10, in the form of a payment to Kalamazoo for $19,788.07 after investigating a June 27, 2001 claim Kalamazoo had submitted to Westfield in the amount of $24,537.63.[4]

---

[1] According to the general release between Kalamazoo and Continental, the actual cash value of the water damage was $208,188. In this action, Kalamazoo seeks $149,780, which it claims is the difference between the total replacement cost and the actual cash value.

[2] Kalamazoo provides no accounting of the expenses that make up this figure. In any event, as our discussion demonstrates, since this is not a case where the property at issue – here, the building – was totally destroyed, the proper measure of damages is the cost of repairs, not the actual cash value of the loss. *See* discussion *infra* Part IV.

[3] Westfield also asserted that the water damage was not a loss covered by the policy.

[4] Kalamazoo does not refer to this payment in its brief but we note that in its June 7, 2001 claim letter, Kalamazoo requested $24,537.63 in reimbursement for labor, clean-up, and tile replacement relating to the damages caused by the storm. *See* J.A. at 492-93. Kalamazoo suggested that the claim should be subrogated to Continental but did not refer to any pending settlement negotiations with Continental; nor did the letter indicate the total cost to repair the damages.

## II.  PROCEDURAL HISTORY

In response to the denial of its claim for $149,780, Kalamazoo brought suit against Westfield for breach of contract in Kalamazoo County Circuit Court on July 1, 2002.  Invoking diversity jurisdiction[5], Westfield timely removed the case to the district court for the Western District of Michigan.  At the close of discovery, both parties moved for summary judgment.  On June 10, 2003, the court granted summary judgment in favor of Kalamazoo, and entered a $149,780 judgment in its favor.[6]  The court's decision was in part based on its conclusion that Westfield had conceded, or waived, its defense that Kalamazoo's release of claims against Continental constituted breach of contract.  Westfield timely filed a motion for reconsideration of the judgment, asserting that the district court improperly deemed its breach of contract defense waived and, moreover, that Kalamazoo's destruction of its subrogation rights warranted a reversal and entry of summary judgment in its favor.  The court denied the motion to reconsider on August 1, 2003.

On appeal to this Court, Westfield raises two main arguments.  Initially, Westfield asserts that it did not "concede" its breach of contract defense, as the district judge concluded.  Westfield further maintains that Kalamazoo is not entitled to the amount it seeks because it breached its insurance contract with Westfield by settling with Continental and thus extinguishing Westfield's contractual subrogation rights.  Westfield's second argument is that, in any event, the water damages to Kalamazoo's building are not a "covered loss" within the meaning of the policy.  Finally, in connection with the second argument, Westfield asserts that assuming summary judgment for Kalamazoo was proper, the amount of damages awarded is not supported by evidence.  Because we resolve the subrogation issue in Westfield's favor, we need not consider Westfield's alternative arguments.

## III.  STANDARD OF REVIEW

When a party seeks review of a summary judgment order by way of a motion to reconsider, we review the court's denial of the motion *de novo*.[7]  *E.g.*, *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998) (*en banc*).  Similarly, we review a district court's decision to grant summary judgment *de novo*.  *E.g., Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001), *cert. denied*, 537 U.S. 813 (2002).  Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The district court, and this Court in its review of the district court, must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Accordingly, with respect to whether summary judgment in favor of Kalamazoo was proper, we view the facts in the light most favorable to Westfield.  However, because Westfield also moved for summary judgment below –

---

[5]Westfield is an Ohio corporation, licensed to issue insurance in Michigan.  Kalamazoo is a Michigan limited liability company, with its principal place of business in Michigan.

[6]The district court's opinion is reported at 266 F. Supp. 2d 675 (W. D. Mich. 2003).

[7]Kalamazoo suggests the proper standard of review is the standard applied by this Court when reviewing the denial of a motion to amend a judgment under FED. R. CIV. P. 60, i.e., abuse of discretion.  Its theory is that Westfield's motion for reconsideration, which did not cite the rule pursuant to which it was brought, must be viewed as a motion under Rule 60.  We disagree and construe Westfield's motion as a motion to alter or amend the judgment brought under Rule 59(e) because it presents a substantive legal challenge to the district court's reasoning and does not merely point to the type of clerical error or palpable defect in a judgment that is the province of Rule 60.  *See*, *e.g.*, *Crown Plaza Partners v. City of Rochester Hills*, 2000 WL 658029, at *3-4 (6th Cir. May 8, 2000) (unpublished opinion).

and now seeks both a reversal and entry of judgment in its favor – we consider *de novo* the question whether Westfield is entitled to summary judgment. Accordingly, as to Wesfield's argument that its motion for summary judgment was improperly denied, we review the facts in the light most favorable to Kalamazoo. *See*, *e.g.*, *Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 456-57 (6th Cir. 2004) (discussing the proper standard of review when reviewing parties' cross motions for summary judgment). As we make clear in our discussion *infra*, however, the resolution of this case does not depend on any factual disputes. We hold in favor of Westfield because, having impaired Westfield's right of subrogation without notice or consent, Kalamazoo is precluded from bringing this action as a matter of law.

## IV. DISCUSSION

In a diversity action, a federal court must apply the law of the forum state. *Klaxon Co. v. Sentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The policy at issue in this case, therefore, must be analyzed under Michigan law. In Michigan, "[t]erms in an insurance policy must be given their plain meaning and the court cannot 'create an ambiguity where none exists.'" *Heniser v. Frankenmuth Mut. Ins. Co.*, 534 N.W.2d 502, 505 (Mich. 1995) (quoting *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 397 (Mich. 1991)); *see also Raska v. Farm Bureau Mut. Ins. Co.*, 314 N.W.2d 440, 441 (Mich. 1982). Additionally, the insured bears the burden of proof as to whether the policy applies to the loss upon which the claim is based. *E.g.*, *Heniser*, 534 N.W.2d at 505 n.6; *Fire Ins. Exch. v. Diehl*, 545 N.W.2d 602, 609 (Mich. 1996) (Riley, J., dissenting).

Westfield asserts that by virtue of its settlement and release agreement with Continental, Kalamazoo waived any rights it may have had under the policy to collect payment from Westfield. Westfield maintains that under the policy, Kalamazoo's right to recover from Westfield is subject to an express condition with which it failed to comply. We agree. First, Westfield does not dispute that under the policy, it is obligated to provide Kalamazoo with the cost of repairs to damaged property in the event of a covered loss, i.e., the total replacement cost value or RCV. However, under Westfield's standard commercial property insurance policy, an insured's right to recover from Westfield is subject to the condition that the insured in no way impair Westfield's right of subrogation against the party who caused the damage to the insured's property. The Commercial Property Conditions section of the policy provides, in relevant part:

D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part . . .

. . .

I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. *That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing* . . .

2. *After a loss* to your Covered Property . . . *only if*, at the time of loss, that party is one of the following:

            a.  Someone insured by this insurance;

            b.  A business firm:
                  (1) owned or controlled by you; or
                  (2) that owns or controls you; or

            c. Your tenant.

J.A. at 62-63 (insurance policy) (emphases added).

Kalamazoo does not challenge the validity of this policy condition or the bar against legal action for failure to comply with it[8]; nor does it suggest that the general release it entered into with Continental falls within one of the exceptions listed in section I(2) of the policy; nor, finally, does Kalamazoo suggest that it timely notified Westfield of the possibility of a release and of the total amount of the loss.[9]  Instead, Kalamazoo asserts that it did "nothing after loss to impair [Westfield's] rights" and therefore fully complied with the policy.  Brief of Appellee at 18-19.  In support of this conclusion, Kalamazoo presents a flawed reading of Michigan's law of damages. Its argument proceeds as follows:  First, Kalamazoo maintains that in an action for damages to commercial property caused by a builder or renovator's negligence, the proper amount of damages is the actual value of the property damaged.  Brief of Appellee at 19.  Second, Continental was therefore liable to Kalamazoo for no more than the actual value of the property damages. Accordingly, Kalamazoo submits, Kalamazoo's settlement with Continental in no way impaired Westfield's right of subrogation; by paying Kalamazoo the actual value of the loss, Continental had paid the maximum amount it owed under the law.  Put another way, Kalamazoo's position is that if it had collected from Westfield instead of obtaining payment from Continental, Westfield's right of subrogation against Continental would be limited to the actual value of the property damages; the settlement and release, therefore, makes Westfield no worse off than it would have been.

The flaw in Kalamazoo's argument is its basic premise.  In Michigan, the appropriate amount of damages in an action for negligent damage to property is clear:

> It is the settled law of this state that the measure of damages to real property, if permanently irreparable, is the difference between its market value before and after the damage.  However, if the injury is reparable, and the expense of repairs is less than the market value, the measure of damage is the cost of the repairs.

*Strzelecki v. Blaser's Lakeside Indus.*, 348 N.W.2d 311, 312 (Mich. Ct. App. 1984) (*per curiam*) (quoting *Bayley Prods. Inc. v. American Plastic Prods. Co.*, 186 N.W.2d 813, 816 (Mich. Ct. App.

---

[8] In Michigan, an insured's failure to comply with this standard policy condition operates to bar an action against the insurer for recovery on the policy.  *See Stolaruk Corp. v. Cent. Nat'l Ins. Co.*, 522 N.W.2d 670, 672-73 (Mich. Ct. App. 1994), *appeal denied*, 538 N.W.2d 679 (Mich. 1995); *Poynter v. Aetna Cas. & Sur. Co.*, 163 N.W.2d 716, 718 (Mich. Ct. App. 1968).  Indeed, it is a well-recognized principle of insurance law that "as a general rule where an insured forecloses an insurer's right to subrogation by releasing the tortfeasor, the insurer is released from its liability to pay policy benefits . . . even if the insured has not been fully compensated for a loss."  16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 224:136 (3d Ed. Updated 2004) [hereinafter Couch on Insurance].

[9] Kalamazoo admits that the first time it notified Westfield of the September 6, 2001 release and the claim for $149,780 was in its letter dated November 1, 2001.  Kalamazoo's June 7, 2001 claim – which Kalamazoo does not mention in its brief – was for $24,537.63 and made no reference to additional damages to the property.  At oral argument, counsel for Kalamazoo asserted that Kalamazoo additionally notified Westfield of the loss by submitting a property loss notice form to Westfield on June 14, 2001, via Westfield's agent, The Campbell Agency.  This notice simply states that wind and water damage occurred at the property; it contains no dollar amounts.  In any event, at no point did Kalamazoo put Westfield on notice that it might settle with Continental for $208,188.  Similarly, at no point did Kalamazoo seek to preserve Westfield's right of subrogation against Continental and Amerisure.

1971)); *see also Kratze v. Indep. Order of Oddfellows*, 500 N.W.2d 115, 149 (Mich. 1993) ("If the injury is reparable . . . the proper measure of damages is the cost of restoration of the property to its original condition, if less than the value of the property before the injury.") (citation omitted); *Tilson v. Consumers' Power Co.*, 256 N.W. 801 (Mich. 1934); 7 MICH. CIV. JUR. DAMAGES § 50 (discussing the proper damages in actions for negligent injury to real property).[10]   There is no contention in this case that the damage sustained by Kalamazoo's building rendered the property irreparable.  To the contrary, not only was the property reparable, it was in fact repaired.[11] Accordingly, in an action for negligence against Continental, Kalamazoo would be entitled to the "cost of the repairs", i.e., the complete $357,968.  *Strzelecki*, 348 N.W.2d at 312; *Kratze*, 500 N.W.2d at 149.  By settling with Continental for merely $208,188 and releasing it from all further claims, Kalamazoo extinguished Westfield's right of subrogation, by which Westfield could have secured the balance of the damages – the $149,780 now in dispute – from the tortfeasor, Continental, or its insurer, Amerisure.  Consequently, because Kalamazoo deprived Westfield of its subrogation rights as to this balance, Kalamazoo is legally precluded from demanding that Westfield pay the balance.  *E.g.*, *Stolaruk v. Cent. Nat'l Ins. Co. of Omaha*, 552 N.W.2d 670, 673-74 (Mich. Ct. App. 1994), *appeal denied*, 538 N.W.2d 679 (Mich. 1995) (holding that an insured is barred from recovery under an insurance policy if it extinguishes the insurer's right of subrogation by releasing a tortfeasor); *Poynter v. Aetna Cas. & Sur. Co.*, 163 N.W.2d 716, 718 (Mich. Ct. App. 1968) (same); *see also* 16 COUCH ON INSURANCE § 224:136 ("As a general rule, an insured who deprives an insurer, by settlement and release, of its right of subrogation against a wrongdoer, thereby provides the insurer with a complete defense to an action on the policy . . . .").  Kalamazoo does not contest this principle of insurance law, instead relying on the argument we have already rejected – namely, that it did not impair Westfield's right of subrogation in the first place.

Finally, Kalamazoo's argument that Westfield "conceded" its breach of contract defense is wholly without merit.  Westfield cited Kalamazoo's failure to abide by the policy's subrogation condition in its claim denial letter of February 28, 2002 (J.A. at 288) and did not waive the subrogation issue during the pleadings. *See* J.A. at 16-27.  Moreover, Westfield moved for summary judgment based on the same argument it makes here.  *See* J.A. at 135-36. (Defendant's Motion for Summary Judgment).  Yet Kalamazoo nonetheless maintains that the argument was "conceded." Brief of Appellee at 16-17.  Its basis for this assertion is the December 19, 2002 deposition testimony of a Westfield employee, claims adjuster Curtis Devries.[12]   Devries stated that it was his understanding that Westfield's right of subrogation against a tortfeasor is limited to the extent of actual cash value.  When asked if under these circumstances it would be fair to say that a release "would not affect Westfield's subrogation rights," Devries responded in the affirmative.  J.A. at 350 (Devries Depo.).  In our view, Devries' testimony is at most evidence that a Westfield claims adjuster misunderstood Michigan's law of negligent damage to property.  Westfield raised Kalamazoo's failure to comply with the policy condition in its answer and clearly presented the

---

[10] Kalamazoo's misapprehension as to the correct measure of damages may be due to only superficially reading the case it cites for the proposition that actual cash value is the proper measure.  Kalamazoo relies upon an unpublished opinion of this Court, which observed that "[i]n negligence actions, Michigan appellate courts have held that damages for *destruction* of property may not be based on replacement cost without any deduction for depreciation." *Paul v. Aetna Casualty & Surety Co.*, 1987 WL 38865, at *2 (6th Cir. 1987) (unpublished opinion) (emphasis added).  If Kalamazoo's building had been destroyed, as opposed to reparably damaged, its reliance on this statement would be availing.

[11] Kalamazoo does not argue, and we have no reason to believe, that the total cost to repair the building exceeded its market value.  We note that according to Kalamazoo, the total repair cost amounted to $357,968, while the policy limit was $4 million.  *See* J.A. at 155 (policy).

[12] Curiously, Kalamazoo initially offered no basis for its assertion that Westfield waived or conceded its defense that Kalamazoo breached the policy by impairing Wesfield's subrogation rights.  *See* J.A. at 38 (Defendant's Motion for Summary Judgment).  Even more curiously, the district court accepted Kalamazoo's assertion without investigation. *See* J.A. at 447 & n.1 (Dist. Ct. Op.).

argument in its motion for summary judgment. Against this backdrop, Kalamazoo cannot suggest that a claims adjuster's deposition testimony – on a question of pure *law* – has the legal effect of a waiver.[13]

In light of these legal conclusions, we hold that the district court should have granted Westfield's motion for summary judgment and denied Kalamazoo's.

### V. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with instructions that the district court enter judgment for Westfield.

---

[13]We also note that it was Devries who issued the claim denial letter to Kalamazoo nearly ten months prior to his deposition. The denial letter cited Kalamazoo's failure to adhere to the subrogation condition in the policy as a basis for the denial.