**MAXUM INDEMNITY COMPANY,**
**Plaintiff–Appellee,**

v.

**DRIVE WEST INSURANCE SERVICES, INC./Mulberry Insurance Services, Inc., et al., Defendant,**

**National Condo & Apartment Insurance Group, Inc., Defendant–Appellant.**

**No. 15–3199.**

United States Court of Appeals, Sixth Circuit.

Nov. 18, 2015.

BEFORE: SILER, CLAY, and GIBBONS, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff Maxum Indemnity Company filed this diversity action pursuant to 28 U.S.C. § 1332 seeking rescission of a professional errors and omissions insurance policy with Defendant Drive West Insurance Services, Inc. or, alternatively, a declaration that the insurance policy fails to

afford coverage in the underlying litigation by Defendant National Condo & Apartment Insurance Group, Inc. against its insured, Drive West. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We disagree with the determination of the district court that the language of the insurance contract unambiguously barred coverage of the claims No. 15–3199, submitted to Maxum, and therefore **REVERSE** and **REMAND** for further proceedings consistent with this opinion.

## I.

In June 2011, Drive West Insurance Services, Inc. d/b/a Mulberry Insurance Services, Inc. ("Mulberry"), a wholesale insurance broker, contacted Defendant National Condo & Apartment Insurance Group, Inc. ("NCAIG"), a retail insurance broker, regarding a commercial real estate/habitation insurance program. Mulberry, a California corporation, and NCAIG, an Ohio corporation, entered a business relationship, whereby Mulberry issued quotes and binders for insurance coverage to NCAIG, which NCAIG then issued to its own clients.

Although the quotes and binders issued by Mulberry to NCAIG named AIX Specialty Insurance Company ("AIX") and North American Specialty Insurance Company as the insurance carriers, those companies had never issued or approved the policies, whose policy limits amounted to well over $100,000,000. At that point, unbeknownst to NCAIG, an individual named Michael Ward, who lacked authority to sell insurance policies, was selling these insurance policies through his captive insurance company, JRSO, Inc. The insurance coverage that property owners thought they were buying simply did not exist.

By September 14, 2011, following communication from counsel for AIX, NCAIG contacted Mulberry, and learned from Mulberry of the involvement of Ward and JRSO. On September 19, 2011, counsel for AIX sent cease-and-desist letters to both Mulberry and NCAIG informing each party that AIX had no business relationship with it, and had never issued or approved any of the policies in question. While the letters demanded that the companies cease using the AIX name, neither letter threatened suit. NCAIG then contacted Ward, who described the cease-and-desist letter as a misunderstanding, and reassured NCAIG and Mulberry that he would secure another carrier for the insurance program. Ward subsequently informed NCAIG that North American Specialty/Capacity, a Swiss Re entity, would be the "front paper" for the program, and that Swiss Re would be the reinsurer, and made the same assurance to AIX counsel. Subsequent binders and quotes issued by Mulberry to NCAIG, also fraudulent, named North American Specialty Insurance Company ("North American Specialty") as the carrier. At NCAIG's request to Ward, Mulberry was removed from the insurance program in October 2011, and was replaced the following month by another wholesale broker the following month. Thereafter, Mulberry and NCAIG had little contact.

On February 10, 2012, Swiss Re sent Mulberry a cease-and-desist letter stating that, pursuant to its own internal investigation and information from the Illinois Department of Insurance, it had learned of policies issued by Ward and JRSO allegedly carried by North American Specialty, which lacked the authority of North American Specialty. The letter warned Mulberry that if Mulberry continued marketing policies allegedly issued by North American Specialty, Swiss Re would "not hesitate to take all steps necessary, including injunctive relief," but did not request monetary relief, or threaten a suit for dam-

ages. AIX sent Mulberry a second cease-and-desist letter on February 17, 2012 later stating that it had become aware that Mulberry had continued to use the AIX name, although AIX itself had never issued the policies, and that AIX would "be referring this matter to the fraud units at all appropriate Insurance Departments," but again did not threaten legal action. The Illinois Department of Insurance sent Mulberry a letter on February 22, 2012, addressed only "Dear Producer or Consumer," informing Mulberry that it had, "or may have, been issued a binder of coverage or an insurance policy purporting to be from" AIX or North American Specialty which may not be legally valid. The letter stated that the Department of Insurance would "seek appropriate regulatory relief for affected parties" and that the Offices of the Special Deputy Receiver had identified and seized monies that may have been intended as premium payments, but did not suggest legal action against Mulberry itself.

Meanwhile, Mulberry had applied for professional errors and omissions liability coverage through Maxum Indemnity Corporation ("Maxum"), a Delaware corporation with its principal place of business in Georgia, on January 31, 2012. In response to Question 12(C), which asked if the Applicant had "any knowledge of any potential errors or omissions claim(s)," Mulberry checked "No." Maxum issued professional liability insurance policy PFP 6018512–01 (the "Policy") to Mulberry; coverage began March 1, 2012. The exclusions section of the Policy provided, in relevant part:

This insurance does not apply to:

J. Any "claim" arising out of or resulting from any "wrongful act" or "personal/advertising injury",

(1) Disclosed in your application of insurance or any accompanying documents provided to us; or

(2) You had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim".

Under the Policy, a "wrongful act" was "any actual or alleged negligent act, error or omission in the rendering or failure to render 'professional services'." The Policy defined "claim," in turn, as a "written or verbal demand received by any 'insured' for money or services, including notice of service" of a civil proceeding for monetary damages or "institution of any administrative, judicial, arbitration or alternative dispute proceedings against any 'insured'." The scope of its duty to defend, pursuant to coverage section 1(A), was as follows:

We will have the right and duty to defend any "insured" against any "suit" seeking those "damages". However, we will have no duty to defend an "insured" against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply.

The policy did not include a choice of law.

In Spring 2012, upon becoming aware of the lack of valid insurance for their property, some of the property owners filed suit against NCAIG, alleging breach of contract, negligence, and breach of fiduciary duty. NCAIG sent Mulberry a letter on June 26, 2012 notifying it of the lawsuits and of its intention to hold Mulberry responsible for losses caused to NCAIG. NCAIG proceeded to file third-party claims and cross-claims against Mulberry in several lawsuits.

By August 27, 2012, Maxum was aware of three claims filed by NCAIG against Mulberry, and undertook an investigation. Invoking Exclusion J.2, Maxum denied liability coverage to Mulberry for the third-

party claims and cross-claims asserted by NCAIG in a letter dated October 8, 2012 on the basis that Mulberry had "knowledge and information relating to" the forged insurance before Mulberry's professional liability coverage began on March 1, 2012. The Policy was rescinded effective October 15, 2012. As NCAIG continued to assert third-party claims and cross-claims claims against Mulberry, Maxum continued denying coverage. On June 14, 2014, NCAIG obtained a default judgment against Mulberry in one of the underlying actions.

On March 20, 2013, Maxum filed suit in the United States District Court for the Southern District of Ohio against Mulberry, NCAIG, and others seeking rescission of the Policy or, in the alternative, a declaration that Maxum had no obligation to defend or indemnify Mulberry in any of several underlying lawsuits because Exclusion J.2 excluded those claims from coverage.

Mulberry did not defend this litigation, and a default judgment entered against it on May 29, 2013. Maxum and NCAIG then cross-moved for summary judgment. Maxum's motion for summary judgment asked the court only for a declaration that Exclusion J.2 of the Policy did not cover the claims in the underlying litigation. Maxum argued that the relevant provision contained unambiguous language excluding the underlying claims from coverage, since letters had been sent to Mulberry before the inception date of the policy on March 1, 2012. For its part, NCAIG argued that the language of the policy excluded only those damage claims of which Mulberry had subjective knowledge prior to the inception date of the Policy, and that Maxum had failed to show that Mulberry had known of any specific claims. It also contended that Maxum had breached its duty to defend Mulberry in the underlying litigation, and wrongfully denied coverage.

The district court declined to conduct a choice-of-law analysis, choosing instead to rely on basic principles of contract interpretation on which Ohio and California law do not differ. As it read the Policy, Exclusion J.2 unambiguously covered all wrongful acts of which Mulberry knew prior to coverage. Because the claims NCAIG sought to bring arose from the wrongful acts of Ward, of which Mulberry had related information prior to the inception, it held NCAIG's claims excluded from coverage. Any other reading, including NCAIG's preferred reading requiring subjective knowledge of specific claims was strained, in its view. Accordingly, it denied NCAIG's motion for summary judgment. It granted summary judgment to Maxum and issued a declaration stating that "the insurance contract between Plaintiff and Mulberry does not afford coverage and Plaintiff owes no obligation under such contract to Defendants or any other entity or individual in connection with the underlying actions." NCAIG appealed.

## II.

We review a grant of summary judgment *de novo*. *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 341 (6th Cir.2005). Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose

motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir.2001) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991)).

## A. Choice of Law

■ As a threshold matter, we must decide, as the district court did not, which state's law to apply. The district court adopted Maxum's argument that choice-of-law analysis was unnecessary because it would win under application of either Ohio or California law. Its decision cited case law from both jurisdictions in support of its ultimate result. The better course of action would have been to choose which state's law applied.

Federal courts sitting in diversity apply the choice-of-law rules of the forum state; here, Ohio. *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir.2014). Under Ohio choice-of-law rules, courts interpreting contracts that lack choice-of-law provisions "apply the law of the state with the most significant relationship to the contract." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir.1996). In assessing the significance of those relationships, Ohio has adopted the test articulated in §§ 188 and 6 of the Restatement (Second) of Conflict of Laws. *Id.* Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(b) the place of performance,

(c) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

The general principles articulated in § 6 are as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The insurance contract at issue in this case was between Mulberry, a California corporation, and Maxum, a Delaware corporation with its principal place of business in Georgia. Mulberry negotiated the contract and entered into it from California. Maxum would have tendered any payment under the contract to Mulberry in California, but the lawsuits it chose not to defend were filed in state and federal courts located in Ohio. The fraudulent quotes and binders at issue in those suits

were apparently issued to owners of properties in a variety of jurisdictions. Weighing the Restatement factors, we deem California to have had the most significant relationship to the Maxum Policy, the parties to it, and performance under its terms.

## B. Interpretation of Exclusion J.2 under California contract law

Under California law, "ordinary rules of contractual interpretation apply" to insurance contracts. *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115, 90 Cal. Rptr.2d 647, 988 P.2d 568 (1999). Courts place the burden of proving an exclusion on the insurer; if an exclusion "ambiguously lends itself to two or more reasonable constructions, the ambiguity will be resolved against the insurer and in favor of coverage." *Smith Kandal Real Estate v. Cont'l Cas. Co.*, 67 Cal.App.4th 406, 414, 79 Cal.Rptr.2d 52 (1998). Exclusion J.2 provides that the Policy did not cover:

> J. Any "claim" arising out of or resulting from any "wrongful act" or "personal/advertising injury",
>
> (1) Disclosed in your application of insurance or any accompanying documents provided to us; or
>
> (2) You had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim".

NCAIG argues that only those claims arising from wrongful acts that they subjectively believed, prior to inception of the Policy, would result in claims that are uncovered. Maxum counters that the Exclusion J.2 applies to all claims where the insured simply had information prior to the coverage period relating to a "wrongful act" that resulted in a claim. Especially because the presumption of coverage is so strict, we are not prepared to say that either construction is unreasonable in this

case. This Court is therefore obliged to construe the language of the Policy in favor of coverage. *See Smith Kandal Real Estate*, 67 Cal.App.4th at 406, 79 Cal.Rptr.2d 52.

NCAIG raises a separate issue, barely addressed by Maxum, as to whether Maxum breached its duty to defend Mulberry in the underlying litigation. The Policy states:

> We will have the right and duty to defend any "insured" against any "suit" seeking those "damages". However, we will have no duty to defend an "insured" against any "suit" seeking "damages" for a "wrongful act" to which this insurance does not apply.

In NCAIG's view, because the Maxum failed to show that Mulberry subjectively believed that the issuance of the fraudulent insurance would result in a claim, it also breached its duty to defend the litigation, and is therefore liable for the default judgment. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 279, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (holding that insurance companies that breach the duty to defend to be liable on any subsequent judgment).

■ The next inquiry is whether the knowledge of claims should be subjective or objective: namely, whether the language applies only to those wrongful acts that Mulberry believed, prior to coverage, would turn into claims or whether it applies to claims that it should have known would do so. Without citing any case law applying an objective standard to similar language, Maxum argues that, if Mulberry had issued over $100 million in false insurance, "claims were all but a certainty." Pl. Br. at 22.

While the court below agreed with Maxum's interpretation of the language, other courts have read similar language to cover only those claims that the insured, at in-

ception, subjectively anticipated might result in claims. *See McDowell Bldg., LLC v. Zurich Am. Ins. Co.*, No. Civ. RDB–12–2876, 2015 WL 1656497, at *2 (D.Md. Apr. 13, 2015) (exclusion where "prior to the effective date of this policy you or any 'Insured' had no knowledge of any 'claim' or circumstances, involving an act, error, or omission, which may result in a 'claim' under this policy" applied only to outstanding claims and to circumstances that insured subjectively believed would result in suit); *see also Rivelli v. Twin City Fire Ins. Co.*, 359 Fed.Appx. 1, 3 (10th Cir.2009) (affirming district court's holding that exclusion for "any knowledge or information of any act, error, omission, fact or circumstance which may give rise to a claim" necessitated a subjective knowledge standard); *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 921 (9th Cir. 2008) (holding that where law firm's insurance application had asked whether any attorneys, "[a]fter inquiry ... [were] aware of any circumstances, allegations ... or contentions as to any incident which may result in a claim," the language " 'may result' denote[d] something more than a purely theoretical possibility of a lawsuit"). NCAIG also notes that courts finding exclusions for claims of which an insured should have known usually on language about reasonable foreseeability. *See, e.g., Weddington v. United Nat'l Ins.Co.*, 346 Fed.Appx. 224, 226 (9th Cir.2009). Maxum does not cite any cases in which courts construed similar exclusions and relies on its analysis of lack of ambiguity. We agree with other courts that a subjective knowledge standard is appropriate under this contract language.

Maxum can still evade coverage if it shows that Mulberry was subjectively aware of the potential for suit arising from the unauthorized insurance prior to coverage. However, it has not. In its policy application dated January 31, 2012, Mulberry represented that it knew of no potential claims. Neither the letter it received in September 2011 from AIX nor any of the three letters it received in February 2012 from AIX, Swiss Re, and the Illinois Department of Insurance mentioned any potential demands for monetary relief, let alone a lawsuit for damages. Maxum thus failed to meet its burden of showing that the claims were excluded based on Mulberry's prior knowledge, and is not entitled to summary judgment on the issue of coverage.

■ Furthermore, Maxum was not entitled to the declaration issued by the district court that it had no duty to defend Mulberry. Under California law, the duty to defend an insured "aris[es] on tender of defense and last[s] until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). An insurer's duty to defend depends on the facts known to it at the time defense is denied, rather than the ultimate adjudication of coverage. *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 500 (9th Cir.1997). An insurer who refuses to defend (as opposed to defending and reserving its rights to seek indemnification later from the insured) does so at its own risk: if the insurer wrongfully refuses to defend, it will be bound by any ensuing judgment against the insured. *See Gray*, 65 Cal.2d at 279, 54 Cal.Rptr. 104, 419 P.2d 168. Maxum may be bound by the default judgment NCAIG secured against Mulberry.

■ NCAIG's cross-motion for summary judgment must also be evaluated on its own merits. *See B.F. Goodrich Co.*, 245 F.3d at 592. That we must now construe all disputed facts in favor of Maxum, rather than NCAIG, does not affect our

analysis that the policy applies to claims concerning which an insured had information prior to the coverage period. The bar is lower for NCAIG to establish a duty to defend than for Maxum to evade it; under California law, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.*" *Montrose Chem. Corp.*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). The record does not establish that Mulberry knew of claims prior to March 1, 2012. Moreover, because any dispute about insurance language must be resolved in favor of coverage if language can be reasonably construed to cover a claim, the third-party claims and cross-claims are covered by the policy, as NCAIG contends in its motion for summary judgment. *See Smith Kandal Real Estate*, 67 Cal.App.4th at 414, 79 Cal.Rptr.2d 52. Thus, the district court should not have issued a declaration that Maxum owed no duty to NCAIG or Mulberry. NCAIG is entitled to summary judgment on the issues of breach of the duty to defend and of coverage under the Policy.

### III.

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment to Maxum, **VACATE** its declaration that Maxum owed no duty to NCAIG or Mulberry, and **REMAND** for further proceedings, with an instruction to enter summary judgment in favor of NCAIG.

JULIA SMITH GIBBONS, Circuit Judge, dissenting.

Because I do not think the insurance policy clause in question is ambiguous, I respectfully dissent.

As the district court notes, this case "turns on whether Exclusion J.2 is ambig-uous." *Maxum Indem. Co. v. Drive W. Ins. Servs., Inc.*, No. 1:13-cv-191, 2015 WL 457025, at *3 (S.D.Ohio Feb. 3, 2015). Under both California and Ohio law, contract terms are ambiguous when subject to two or more reasonable interpretations. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir.2008) (citing *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003)); *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 346 (6th Cir.2005) (citing *Safeco Ins. Co. of Am. v. Robert S.*, 26 Cal.4th 758, 110 Cal.Rptr.2d 844, 28 P.3d 889, 893 (2001)). I agree with the district court that National Condo & Apartment Insurance Group's (NCAIG) reading of the exclusion clause is "strained" and therefore unreasonable. *Maxum Indem. Co.*, 2015 WL 457025, at *3.

Exclusion J, in full, provides:

This insurance does not apply to:

J. Any "claim" arising out of or resulting from any "wrongful act" or "personal/advertising injury",

 (1) Disclosed in your application of insurance or any accompanying documents provided to us; or

 (2) You had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim".

NCAIG's version of the exclusion essentially reads:

This insurance does not apply to:

J. Any "claim" ... (2) You had knowledge of or information related to ... and which may result in a "claim".

Instead of reading "knowledge of or information related to" as modifying "claim," as NCAIG advocates, it makes considerably more sense for clause (2) to refer to "wrongful act" or "personal/advertising injury."

In my opinion, NCAIG's contrary interpretation is unreasonable, and I would affirm the district court's grant of summary judgment, because "[t]he claims Defendants seek to assert arise from Ward's wrongful acts of which Mulberry had related information prior to the insured time-period." *Maxum Indem. Co.*, 2015 WL 457025, at *3.