KAREN NELSON MOORE, Circuit Judge,
dissenting.
Plaintiffs Matthew Gillis and Fred Wal-raven were Correctional Facility Officers at the Bay County Jail in Bay City, Michigan. Gillis was also president of the corrections officers’ union. During a brief investigation into various allegations of misconduct at the jail, Gillis and Walra-ven posted a notice for other corrections officers advising them of their rights to union representation during the investigation. Shortly after Sheriff John Miller learned of the posted notice, Walraven was fired and Gillis resigned. Sheriff Miller argues that Gillis and Walraven violated department policy and were reprimanded and terminated accordingly. Gillis and Walraven disagree, arguing that their discipline and termination were the result of retaliation for their exercise of speech protected by the First Amendment to the United States Constitution. The district court concluded that Walraven and Gillis did not have a cognizable First Amendment retaliation claim and granted the defendants’ motion for summary judgment. The majority’s opinion, which upholds the adverse grant of summary judgment, has the ultimate effect of eroding the bedrock guarantees of the Supreme Court’s decision in NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), and relies too heavily on the speculative assessments of government employers in endorsing restrictions on public employees’ speech. I respectfully dissent.
I.
A.
We review de novo a district court’s decision to grant a motion for summary *691 judgment. Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775 (6th Cir. 2016). We uphold a district court’s grant of summary judgment “only where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.” Id. See Fed. R. Civ. P. 56(a). We have defined a dispute of material fact as genuine if “the evidence is such that a reasonable jury could return a verdict for the non-moving party.” Ford v. Gen. Motors Corp., 305 F.3d 545, 551 (6th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
“The district court, and this Court in its review of the district court, must view the facts and any inferences reasonably drawn from them in the light most favorable to the party against whom judgment was entered.” Kalamazoo Acquisitions, L.C.C. v. Westfield Ins. Co., 395 F.3d 338, 342 (6th Cir. 2005) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587,106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As we have noted, “at the summary judgment stage[,] the judge’s function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.” Jackson, 814 F.3d at 775 (quoting Anderson, 477 U.S. at 249,106 S.Ct. 2505); see also Arban v. W. Publ’g Carp. 345 F.3d 390, 400 (6th Cir. 2003) (“This court does not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury.”).
In NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the Supreme Court held that an employee covered under the National Labor Relations Act (“NLRA”) has a right to union representation during investigatory interviews if the employee reasonably believes that the interview could result in the employer taking disciplinary action. Weingarten, 420 U.S. at 252-53, 95 S.Ct. 959. The majority does not dispute that Gillis’s and Walraven’s posting in this case constituted a notice under Weingarten.[1]
During an investigation into suspected misconduct at the Bay County Jail, Deputy Matthew Gillis, then president of the corrections officers’ union, began receiving complaints from staff regarding the investigation. R 29-14 (Gillis Dep. at 15) (Page ID #2956). At least five individuals complained to Gillis about the interrogations by Sergeant Shore. Id. Two officers, Jeff Vaness and Wendy Booth, claimed that they asked Shore about whether they needed union representation during Shore’s investigatory questioning. R. 29-14 (Gillis Dep. at 14) (Page ID #2057). Shore is said to have responded by saying, “[i]f you don’t have anything to hide, why would you need union representation.” Id. The officers explained to Gillis that they “were scared” and “didn’t know what was going on.” Id. According to Gillis, “I didn’t know how to handle this, because everybody was asking me about union representation. And we came up with an idea to post the Weingarten rights, which is your rights to union representation.” Id. at Page ID #2058. The record paints a picture of a chaotic investigation with some of the jail’s staff feeling scared or intimidated. Id.
In response to the complaints he received from other jail staff, Deputy Gillis worked with Sergeant Walraven to draft and post a memorandum informing jail staff of their rights under Weingarten. Walraven drafted the initial notice, and *692 Gillis performed the final edits. R. 29-14 (Gillis Dep. at 17) (Page ID #2958). The notice was addressed to the “Bargaining Unit” from “President Matt Gillis” and stated:
Re: Weingarten Rights
Hello everyone I would like to express my gratitude in being your Union President. I feel there is a very important issue that needs to be discussed. Many deputies have been notified they need to report to a superior officer for some type of investigatory interview or investigation. When you are summoned before a superior officer, I strongly suggest you state these words before you say anything else. “If this discussion could in any way lead to me being disciplined or discharged, I request that my Union representative be present at the meeting. Without representation, I choose not to answer any questions.” These rights also cover yourself in the event someone else may be disciplined due to your statement, I am in no way advising you not to cooperate with management, just advising you of your rights.
It is your responsibility to ask for the representation. It is not the responsibility of management to advise you of this. Attached are the actual Weingarten Rights. Please review them as they are extremely important for yourself and everyone else. Even if you don’t think you need representation, it has been proven it is better to have another set of ears as sometimes words are taken out of context.
In conclusion you have the right to discuss union matters with your Union President and Vice President. Some of you may have been ordered not to discuss what was said in a meeting with your superiors. I strongly recommend you advise us of what happened for your protection and others. Again, thank you for your time and I look forward to working with everyone.
Respectfully,
Matt Gillis (POLC LOCAL)
R. 29-15 (Weingarten Memo) (Page ID #3106). Sheriff Miller summoned Deputy Gillis to the Undersheriffs office on February 13, 2014, the day after Gillis posted the Weingarten notice. R. 29-14 (Gillis Dep. at 18) (Page ID #2959). Sheriff Miller threw the notice across the table, asked who wrote it, and declared to Gillis that “I will have you know I can have you prosecuted for interfering with an ongoing investigation for posting this memo.” R. 29-14 (Gillis Dep. at 19) (Page ID #2960). I find the behavior of both Shore and Miller deeply concerning — an issue about which the majority is completely silent.
The majority is, however, concerned about safety at the jail, and emphasizes its concern that the Weingarten memorandum could “hinder [the jail’s] ability to conduct a timely and efficient investigation, and halt the flow of illegal contraband into the prison.” Maj. Op. at 687. I agree with the majority that the safety of inmates and jail officers is of serious concern, and I understand that jail officials must be permitted to investigate allegations of misconduct. However, the Supreme Court contemplated that workplace investigations could be slowed when it held in Weingarten that an employee could request a union representative at his investigatory questioning. Indeed, in Miranda v. Arizona, the Supreme Court endorsed pauses in criminal investigations, requiring that officers read aloud the constitutional rights of the accused. See generally Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Gillis and others who were subjected to Shore’s and Miller’s threatening and intimidating behavior had a reasonable basis for *693 believing that they could be subject to discipline — or worse — and they were therefore entitled to Weingarten’s protections. The majority’s decision today sends the troubling signal that Weingarten will now apply with diminished force within the confines of a jail’s four walls.
B.
Section 198B of Title 42 of the United States Code provides a civil cause of action for persons “who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law.” Smith v. City of Salem, 378 F.3d 566, 576 (6th Cir. 2004). The First Amendment to the United States Constitution provides for a right to freedom of expression and speech. U.S. Const, amend. I.
Matthew Gillis and Fred Walraven, as officers at the Bay County Jail, were public employees. For a public employee to establish a prima facie case for a claim for First Amendment retaliation, we have held that he must demonstrate:
(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by his protected conduct.
Dye v. Office of the Racing Comm’n, 702 F.3d 286, 294 (6th Cir. 2012) (quoting Scarbrough v. Morgan Cty. Bd. of Educ., 470 F.3d 250, 255 (6th Cir. 2006)). See also Cockrel v. Shelby Cty. Sch. Dist., 270 F.3d 1036, 1048 (6th Cir. 2001). In analyzing the first element of a plaintiffs First Amendment retaliation prima facie case, “the court must first discern whether the speech is protected.” Dye, 702 F.3d at 295. Speech of government employees is deemed protected where it “touche[s] on matters of public concern.” Leary v. Daeschner, 228 F.3d 729, 737 (6th Cir. 2000) (citing Connick v. Myers, 461 U.S. 138, 146,103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); Pucci v. Nineteenth Dist. Ct., 596 Fed.Appx. 460, 468 (6th Cir. 2015). The Supreme Court has held that speech touches on matters of public concern when it is “speech ‘relating to any matter of political, social, or other concern to the community.’ ” Dye, 702 F.3d at 295 (quoting Connick, 461 U.S. at 146, 103 S.Ct. 1684).
When a public employee’s speech does relate to a matter of public concern, our analysis of the first element of the prima facie First Amendment retaliation case turns to the balancing test developed in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Cockrel, 270 F.3d at 1055. The Pickering balancing test is used “to determine if the employee’s free speech interests outweigh the efficiency interests of the government as employer.” Scarbrough, 470 F.3d at 255. When conducting a Pickering analysis, a court must weigh “the employee’s interest in ‘commenting upon matters of public concern’ ” against “ ‘the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.’” Leary, 228 F.3d at 737 (quoting Pickering, 391 U.S. at 568, 88 S.Ct. 1731). Accordingly, “a state is afforded greater leeway to control speech that threatens to undermine the state’s ability to perform its legitimate functions.” Pucci, 596 Fed.Appx. at 470 (quoting Rodgers v. Banks, 344 F.3d 587, 596 (6th Cir. 2003)).
In applying Pickering, we consider “whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker’s *694 duties or interferes with the regular operation of the enterprise.” Dye, 702 F.3d at 295 (quoting Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). “Application of the Pickering balancing test is a matter of law for the court to decide.” Farhat v. Jopke, 370 F.3d 580, 593 (6th Cir. 2004). If a plaintiff successfully establishes his prima facie case of First Amendment retaliation, the burden of persuasion shifts to the defendants, who must, by a preponderance of the evidence, show that they “would have taken the same action even in the absence of the protected conduct.” Leary, 228 F.3d at 737 (citation omitted).
The district court concluded that “Wal-raven’s [and in Gillis’s case, Gillis’s] posting of the notice was not speech touching on matters of public concern.” Walraven v. Miller, 2016 WL 337445, at *8; Gillis v. Miller, 2016 WL 337454, at *8. The majority here does “not decide whether the Weingarten memorandum touched on matters of public concern” because it concludes that Plaintiffs’ claims fail under the Pickering test. I would conclude that Gil-lis’s and Walraven’s speech does touch upon a matter of public concern. Specifically, Walraven and Gillis sought to inform their fellow corrections officers about union-representation rights under Weingar-ten in a disciplinary and potentially criminal investigation, and their doing so touches squarely upon matters of public concern. Because the majority does not resolve this issue and instead determines that the Plaintiffs’ claims fail under the Pickering balancing test, I too will focus my analysis on Pickering.
C.
The majority holds that the Bay County Jail could have reasonably predicted that Gillis’s and Walraven’s speech would have disrupted the work environment at the jail and that regardless of whether their speech touched upon a matter of public concern, their interest in speaking was outweighed by the jail’s interest in efficiently and effectively serving the community. See Maj. Op. at 687 (“[W]e think it clear that Defendants could reasonably have predicted that the Weingarten memorandum might disrupt legitimate law enforcement interests in the jail.”). I would conclude that reasonable jurors could disagree about the potential effect of Gillis’s and Walraven’s speech on the Bay County Jail. Although the majority draws attention to the second to last sentence of the Weingarten notice, which recommends officers advise their union representative of the contents of any investigatory discussions, it gives short shrift to the notice’s bolded sentence which concludes the last paragraph. There, Gillis and Walraven explicitly state that “I am in no way advising you not to cooperate with management, just advising you of your rights.” R. 29-15 (Weingarten Memo) (Page ID #3106). In viewing those two statements in the Weingarten notice, we are required to view the facts in the light most favorable to the non-moving party, and to draw all reasonable inferences in their favor. The notice recommends that officers share the contents of their investigatory discussions with their union representative even if those officers had been ordered to keep those conversations confidential. But also the notice clearly, explicitly, and emphatically says that it is not advising refusal to cooperate with the investigation but rather is advising employees of their rights. When viewing these facts in the light most favorable to Gillis and Walraven, I would conclude that the Pickering balancing test favors the Plaintiffs, because their important interest in speaking about their colleagues’ union rights during a potentially criminal investigation is not outweighed by the jail’s interest in operational efficiency.
*695 The record is clear that Shore’s investigation had already caused confusion and disruption at the Bay County Jail. To the extent that the 'Weingarten notice could have caused a disruption by encouraging officers to divulge the content of their confidential investigatory conversations to a union representative, such a disruption was occurring before the notice was posted. However, the Weingarten notice had the real potential to calm the fears of concerned officers and it actually informed the jail’s employees of their rights under the NLRA during this potentially disciplinary and/or criminal investigation. Because the reasonably predicted effect of the Weingarten notice is open to conflicting interpretations and inferences, I am unable to conclude as a matter of law that the jail’s legitimate and important interest in health, safety, and efficiency outweighs Gillis’s and Walraven’s interests in speaking out about their fellow officers’ rights to union representation during a potentially disciplinary and criminal investigation.
II.
The majority concludes that Gillis and Walraven do not have a cognizable First Amendment retaliation claim, and that they therefore cannot establish the first prong of a § 1983 action — that they were deprived of a right secured by the Constitution or laws of the United States. The majority does not resolve the question of whether Gillis’s and Walraven’s speech touched upon a matter of public concern, and instead concludes that even if their speech was protected under the First Amendment, their interest in their speech was outweighed by the jail’s interest in operating efficiently, thus precluding Gillis and Walraven from establishing a prima facie case for First Amendment retaliation. I believe that Gillis’s and Walraven’s speech does touch upon a matter of public concern, and that they should prevail under the Pickering balancing test. I would therefore reverse the district court’s judgment, and remand for further proceedings.

. The majority opinion refers to the notice as the “Weingarten memorandum" seventeen times.